**EASTERN MISSOURI LABORERS'
DISTRICT COUNCIL, et al.,
Appellants,**

v.

**CITY OF ST. LOUIS, et al., Respondents.**

No. 70932.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 29, 1997.

Rehearing Denied Sept. 22, 1997.

Jerald A. Hochsztein, Feldacker & Cohen, P.C., St. Louis, for Eastern Missouri Laborers' District Council.

Shulamith Simon, Rosenblum, Goldenhersh, Silverstein & Zaft, P.C., St. Louis, for Site Improvement Association.

James L. Matchefts, Associate City Counselor, St. Louis, for City of St. Louis.

Robert B. Hoemeke, Jon A. Santanngelo, Lewis, Rice & Fingersh, L.C., St. Louis, for Plumbing Contractors Association.

John Goffstein, Bartley, Goffstein, Bolato & Lange, Clayton, for Mechanical Contractors Association, United Association f Pipefitters, Local 562 and Jim O'Mara, Jack Kiely, Jack Ricks and Sprinkler Fitters and Apprentices, Local, Union No. 268.

HOFF, Judge.

Eastern Missouri Laborers' District Council (District Council), a voluntary association, Roger Pryor, G. Thomas Harvill,[1] and Site

---

1. Roger Pryor and G. Thomas Harvill pursued    this lawsuit both individually and "on behalf of

Improvement Association (Site) (all referred to as appellants) appeal from judgments entered in favor of City of St. Louis (the City), the Plumbing Contractors Association, the Mechanical Contractors Association of St. Louis, MO, Inc., the United Association of Pipefitters Local 562, Jim O'Mara, Jack Kiely, Jack Ricks, the Journeyman Plumbers Local No. 35, the Sprinkler Fitters and Apprentices, Local Union 268, Gordon Lundak, and James McKeever (all hereinafter referred to as respondents). We reverse and remand for failure to join an indispensable party.

Appellants challenge the City's interpretation of its Ordinance No. 60826 (Ordinance) and allege the City's interpretation of the Ordinance is unconstitutional.[2] In general the Ordinance adopts the National Standard Plumbing Code, 1987 edition, along with certain specified amendments, including the addition of an Appendix P, as the Plumbing Code of the City of St. Louis. In particular, appellants seek a declaration that the Ordinance does not require that only licensed plumbers install water and sewer mains within public streets or public easements up to the first connection outside of buildings within the City. If it does so require, then appellants seek a declaration that the Ordinance violates appellants' equal protection and due process rights under the Fifth and Fourteenth Amendments to the United States constitution and Article I, sections 2 and 10, of the Missouri constitution. Appellants also seek a permanent injunction prohibiting the City from interpreting and enforcing the Ordinance to permit only licensed plumbers to install water and sewer mains within public streets or public easements up to the first connection outside of buildings.

The trial court in its first order and judgment, which was based upon a stipulation of the parties, found that a justiciable controversy existed and that the Ordinance had to be construed liberally. While expressly acknowledging that "there are laborers who can perform the work in question as well as a

licensed plumber," the trial court concluded that paragraph P–1.2 of Appendix P clearly permits the City's code official to add

> a 'plumbing requirement' essential for sanitation and safety. One such essential requirement could be a minimal level of technical skill for those doing the work. A person must demonstrate certain minimum levels of skill and training to be awarded a license. Requiring a license, therefore, is not an unfair or extreme requirement. It is quite reasonable and not an abuse of discretion to require that licensed plumbers perform work on any or all aspects of water and sewer systems.

The trial court then declared

> Ordinance 60826 of the City of St. Louis allows the City to reasonably require that a plumbing permit [requiring the work be performed by licensed plumbers] be issued before private contractors are allowed to perform the work of installing water mains and sewer mains within the public streets or public easements up to the point of connection of a water main to the water service line connected to a building or to the point of connection of a sewer main to the building sewer connected to a building.

The trial court subsequently entered a separate order and judgment granting respondents' motion for summary judgment directed to appellants' claim that the Ordinance, as interpreted by the City, was unconstitutional. The trial court concluded the Ordinance was constitutionally valid after finding the Ordinance was enacted pursuant to the City's police power in the area of public health and safety. Additionally, the trial court found that appellants had not come forward with evidence sufficient to overcome the presumption of validity applicable to the Ordinance, and appellants had failed to raise a "material issue of fact." Thus, the trial court declared the Ordinance did "not violate the Equal Protection and Due Process clauses of the United States and Missouri constitutions." This appeal followed.

---

members of a class comprising the membership of affiliated locals of Eastern Missouri Laborers District Council." The record available to us contains no indication that the trial court certified any class in this lawsuit.

2. The only other claim pursued by appellants was voluntarily dismissed and is not at issue in this appeal.

The absence of an indispensable party is a jurisdictional requirement which must be addressed by this Court even though none of the parties on appeal raises it. *Yellow Freight Sys., Inc. v. Mayor's Comm'n on Human Rights*, 737 S.W.2d 250, 251 (Mo. App. S.D.1987). Both section 527.110 RSMo1986 and Rule 87.04 provide, in relevant part, that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." Under the circumstances presented by this record, it appears the Metropolitan St. Louis Sewer District (MSD) should have been named a party in this lawsuit. The failure to join MSD as a party to the circuit court proceeding is "fatal to the trial court's judgment[s] and requires reversal and remand." *Yellow Freight Sys., Inc.*, 737 S.W.2d at 251.

Here appellants' claims and requests for relief in the Third Amended Petition for Declaratory Judgment, Injunction, and Other Relief, which was addressed by the trial court's judgments, clearly focus on work performed with respect to both water *and sewer* mains in the City. The claims and requests for relief pertaining to the water main work is intertwined with the claims and requests for relief pertaining to the sewer main work. While the record does not indicate that any entity other than the City has jurisdiction over water mains within the City, the Plan of the Metropolitan St. Louis Sewer District (Plan) indicates that MSD may have jurisdiction over sewer mains within the City.

The Plan provides for an integrated sewer system for the City of St. Louis and most of St. Louis County. *Beatty v. Metropolitan St. Louis Sewer Dist.*, 914 S.W.2d 791, 793 (Mo. banc 1995). Under the Plan, MSD takes title to most of the existing sanitary and storm water sewer systems within the boundaries of the district. *Beatty v. Metropolitan St. Louis Sewer Dist.*, 867 S.W.2d 217, 218 (Mo. banc 1993); Article 3, sections 3.010 [3] and 3.020(1) [4] of the Plan.

Moreover, Article 3, section 3.020 of the Plan gives MSD the power

(2) To prepare or cause to be prepared and to revise and adopt plans, designs, and estimates of costs, of a system or systems of ... mains ... which, in the judgment of [MSD's] Board, will provide an effective and advantageous means for insuring the area within [MSD] of adequate sanitary and storm water drainage and of adequate sanitary disposal and treatment of the sewage thereof ...

(7) To contract with municipalities, districts, other public agencies, individuals, or private corporations, or any of them whether within or without [MSD], for the construction, use, or maintenance of common or joint sewers, drains, outlets, and disposal plants, or for the performance of any service required by [MSD and;]

---

3. Article 3, section 3.010 of the Plan provides that

[E]ffective on July 1, 1954, ... the existing sanitary and storm water sewer systems and facilities of any and all municipalities, ... within the boundaries of [MSD], together with all contracts, rights, privileges, interests, easements, .... of whatever description pertaining to or relating to the design, construction, maintenance, operation, or affairs of such existing sanitary and storm water sewer systems and facilities, and title to the same, shall be transferred and dedicated to the use of and be in the possession and under the jurisdiction, control, and supervision of [MSD]....[I]n order to assure continuity of operation and maintenance any such municipality, sewer district, or other public agency shall continue to maintain and operate its existing sanitary and storm water sewer systems and facilities until [MSD's] Board shall by resolution set a date on which [MSD] shall undertake the maintenance and operation of said systems and facilities, and on and after such date [MSD] shall exclusively operate, maintain, and control said systems and facilities.

4. Article 3, section 3.020(1) of the Plan gives MSD the power

To have jurisdiction, control, possession, and supervision of such sewer and drainage systems and facilities as are placed under its jurisdiction by the provisions of this Plan, or may hereafter be placed under its jurisdiction in the manner herein provided; to maintain, operate, reconstruct, and improve the same as a comprehensive sewer and drainage system, and to make additions, betterments, and extensions thereto; to protect the public health and welfare by preventing or abating the pollution of water; and to have all the rights, privileges, and jurisdiction necessary or proper for carrying such powers into execution....

(19) To approve, revise, or reject the plans and designs of all … mains … proposed to be constructed, altered, or reconstructed by any other person or corporation, private or public, in the [MSD]. No such sewer or drainage facilities shall be constructed or reconstructed without the approval of [MSD]. Any such work shall be subject to inspection and supervision of [MSD].

The Plan also expressly gives MSD the power to adopt and promulgate "all ordinances, rules, regulations, by-laws, and agreements necessary, beneficial, or expedient to regulate the use, operation, and maintenance of property and facilities under its control, and to take such further action as may be necessary to carry into effect the powers granted [MSD]." Article 3, section 3.050 of the Plan. The Plan concludes with some miscellaneous provisions, including a provision that any "existing ordinances, orders, rules, and regulations pertaining to matters which are by this Plan placed under the jurisdiction of [MSD] shall remain in full force and effect until superseded by ordinances, orders, rules, or regulations of [MSD]." Article 12, section 12.060 of the Plan.

These Plan provisions make it clear that MSD had an interest in any judicial declaration regarding the requirements for work on sewer mains in public streets or public easements within the City. Such a declaration was requested by appellants. Under the circumstances, MSD was an indispensable party and failure to join it as a party invalidates the trial court's judgments. *Yellow Freight Sys. Inc.,* 737 S.W.2d at 254.

We also note appellants alleged the Ordinance, as interpreted by the City, was unconstitutional. When the constitutionality of an ordinance is challenged in a party's allegations, Rule 87.04 requires service of a copy of the proceeding upon the Attorney General of Missouri, who has a right to be heard. The record does not indicate whether the Missouri Attorney General was served with a copy of the petition in this case. Because the failure to join MSD is fatal to the judgments, it is not necessary to consider the signifi-cance of any failure to serve the Attorney General. *Id.*

The judgments are reversed and the cause is remanded for further proceedings consistent with this opinion.

CRAHAN, P.J., and GRIMM, J., concur.